UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MALLORY MEYER, individually and as daughter and personal representative of the Estate of JAMES EVERETT MEYER, deceased, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-2935-B |
| KEVIN COFFEY, individually and as an agent/employee of the MAYPEARL POLICE DEPARTMENT, and THE CITY OF MAYPEARL, TEXAS, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Maypearl's (Maypearl) Rule 12(c) Motion for Judgment on the Pleadings. Doc. 20. For the reasons that follow, the Court **GRANTS** Maypearl's Motion but also **GRANTS** Plaintiff leave to replead.

## I.

## BACKGROUND[1]

This is a civil rights case. "Plaintiff Mallory Meyer, individually and as the alleged representative of the Estate of James Meyer, seeks monetary damages from Defendants asserting that Mr. Meyer committed suicide because of alleged 'police retaliation, harassment, and intimidation.'" Doc. 20, Def. Maypearl's Rule 12(c) Mot. for J. on Pleads. 3 [hereinafter Maypearl's Mot. J. on

---

[1]The Court draws its factual account from Plaintiff's Amended Complaint (Doc. 18) and the parties' briefing on Maypearl's Motion for Judgment on the Pleadings. Any contested facts are noted as such.

Pleads.] (quoting Doc. 18, Pl.'s Am. Compl. 1).

James Meyer bought and moved into a home in Maypearl, Texas, in April 2013. Doc. 18, Pl.'s Am. Compl. ¶¶ 5, 8. Soon after, he met Shannon Bachman, Maypearl's then police chief. *Id.* ¶ 5. Around that time, Meyer's daughters told him that Maypearl police officer Kevin Coffey was engaging in "inappropriate contact with local teenage girls." *Id.* That concerned Meyer, who relayed his concerns to Bachman. *Id.* Meyer waited for something to come of the news but no "immediate action" was taken. *Id.*

Then on May 18, 2013, Coffey—who was at that time a sergeant with the Maypearl Police Department—entered Meyer's home and arrested him on an outstanding warrant for traffic violations. *Id.* ¶ 9. Plaintiff claims that Coffey entered "Meyer's home without cause or consent and began interrogating him" before the arrest. *Id.* And after the arrest, Plaintiff continues, Coffey "tightly handcuffed" Meyer's hands behind his back despite Meyer's plea for his hands to be placed in front. *Id.* Meyer was "recovering from an auto accident and his arm was in a sling," so Coffey's actions allegedly caused "intense pain and injury to Meyer's injured shoulder, arm, and wrists." *Id.* And that, Plaintiff maintains, was just the beginning. *See id.* ¶¶ 9–10.

In particular, Plaintiff claims that from the May 18, 2013, arrest until his death on June 13, 2015, "Meyer was the subject of excessive force, harassment, and intimidation" by Coffey, who by then was Maypearl's chief of police. *Id.* ¶ 10. Plaintiff asserts that Coffey made death threats and threats to frame Meyer for criminal acts, illegally spied on Meyer, permitted and participated in constant drive-bys, stalked Meyer and his family, sent police to Meyer's home, followed Meyer and his family throughout Maypearl, and directed other law enforcement officers to follow Meyer's family and use pretextual traffic stops to question them. *Id.* Coffey did all of this, Plaintiff says, to retaliate

against Meyer for addressing his "improper sexual conduct with high school girls." *Id.* ¶ 11.

Coffey's actions took a toll on Meyer, according to Plaintiff, and he suffered "anxiety, mental anguish, physical pain and suffering" as a result. *Id.* ¶ 12. Meyer's suffering was so severe, Plaintiff avers, that he committed "suicide to escape the harassment by Chief Coffey" on June 13, 2015. *Id.* ¶¶ 10, 14.

Plaintiff filed suit against Coffey and Maypearl in September 2015. Doc. 1, Pl.'s Orig. Compl. Both defendants filed an Answer in response. *See* Docs. 8, Coffey's Answer to Pl.'s Orig. Compl; 9, Maypearl's Answer to Pl.'s Orig. Compl. Plaintiff followed with her Amended Complaint (Doc. 18). Maypearl answered; Coffey did not. *See* Doc. 19, Maypearl's Answer to Pl.'s Am. Compl. Maypearl then filed its Rule 12(c) Motion for Judgment on the Pleadings. Doc. 20.

Rather than respond to Maypearl's Motion, Plaintiff moved to dismiss her own claims without prejudice. Doc. 27, Pl.'s Mot. Dismiss. Essentially, the parties agree that Plaintiff's claims should be dismissed but disagree as to whether that dismissal should be with or without prejudice. *See id.*; Docs. 28, Maypearl's Resp. to Pl.'s Mot. Dismiss; 31, Coffey's Resp. to Pl.'s Mot. Dismiss. The Court denied Plaintiff's Motion because it was procedurally defective. *See* Doc. 34, Order. That leaves only Maypearl's to be decided. As referenced, Plaintiff failed to respond. Maypearl's Rule 12(c) Motion for Judgment on the Pleadings (Doc. 20) is ripe for the Court's review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also* Fed. R. Civ. P. 7(a); 5C Charles Alan Wright et al., Federal Practice & Procedure

§ 1367 (internal footnotes omitted) ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim, or third-party answer normally will mark the close of the pleadings."). The pleadings in this case are closed and Maypearl timely moved for judgment on the pleadings. *See* Docs. Docs. 8, Coffey's Answer to Pl.'s Orig. Compl; 9, Maypearl's Answer to Pl.'s Orig. Compl.; 20, Maypearl's Mot. J. on Pleads. Thus, the Court may properly consider Maypearl's Rule 12(c) challenge.

A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Court may look to "allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims." *Cox v. Cent. Insurex Agency, Inc.*, No. 3:11-cv-2267-B, 2012 WL 253882, at *2 (N.D. Tex. Jan 26, 2012) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable

to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

Plaintiff's Amended Complaint asserts the following causes of action: (1) "violation of 42 U.S.C. § 1983 by Coffey for illegal search"; (2) "violation of 42 U.S.C. § 1983 against Coffey for illegal seizure"; (3) "violation of 42 U.S.C. § 1983 against Coffey for First Amendment retaliation"; (4) "violation of 42 U.S.C. § 1983 by Shannon Bachman"; (5) "violation of 42 U.S.C. § 1983 by Kevin Coffey"; (6) "violation of 42 U.S.C. § 1983 against [Maypearl] under Monell liability"; (7) "willful and wanton – wrongful death by Kevin Coffey"; (8) "willful and wanton – wrongful death by Shannon Bachman"; (9) "negligent hiring, supervision, and retention by [Maypearl]." Doc. 18, Pl.'s Am. Compl. ¶¶ 20–77. In sum, then, Plaintiff alleges nine claims—five against Coffey, two

against Bachman, and two against Maypearl. *See id.*

But as Maypearl notes in its briefing, it is unclear whether Plaintiff intends that her allegations against Coffey and Bachman also implicate Maypearl. *See* Doc. 20, Maypearl's Mot. J. on Pleads. 6. Put another way, it is not unreasonable to read the Amended Complaint as asserting nine causes of action against Maypearl. With that in mind, Maypearl's Motion addresses all of Plaintiff's claims and argues that, to the extent any of the claims apply to Maypearl, those claims should be dismissed. *Id.* at 4–17. The Court agrees.

A municipality such as Maypearl "is a 'person' subject to suit under § 1983 under certain circumstances." *Linicomn v. City of Dall.*, No. 3:14-cv-0777-D, 2015 WL 5664265, at *2 (N.D. Tex. Sept. 25, 2015) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). More specifically, "municipal liability under [§] 1983 requires proof of three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). For that reason, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (internal footnote omitted). In other words, a liability theory of respondeat superior will not do—a municipality may be held liable only if a constitutional right was deprived under the aegis of an official policy or custom. *See Linicomn*, 2015 WL 5664265, at *2.

The Court, then, must determine whether Plaintiff's Amended Complaint sufficiently alleges those three elements as to each of her claims. To that end, the Court first considers Plaintiff's claims stemming from Meyer's May 18, 2013, arrest, then addresses her claims against Bachman and Coffey,

and finishes its analysis with Plaintiff's express claims against Maypearl.[2]

A.   *Plaintiff's Claims Stemming from Meyer's May 18, 2013, Arrest*

As referenced above, Coffey arrested Meyer on May 18, 2013. Doc. 18, Pl.'s Am. Compl. ¶¶ 9–10. Plaintiff maintains that Coffey entered Meyer's home, interrogated him, and arrested him to retaliate against Meyer for voicing concern about Coffey's conduct with high school girls. *Id.* ¶ 9–11. Plaintiff further maintains that in the course of the arrest, Coffey aggravated existing injuries to Meyer's shoulder, arm, and wrist. *Id.* ¶ 9. Plaintiff's first three claims expressly stem from the arrest and injuries associated with it. *See id.* ¶¶ 20–30. To recap, those claims are: (1) "violation of 42 U.S.C. § 1983 by Coffey for illegal search"; (2) "violation of 42 U.S.C. § 1983 against Coffey for illegal seizure"; and (3) "violation of 42 U.S.C. § 1983 against Coffey for First Amendment retaliation." *Id.*

Maypearl argues that if those claims apply against it, then they should be dismissed without

---

[2] As Maypearl notes in its briefing, "the Maypearl Police Department is discussed separately from [Maypearl] in Plaintiff's" allegations. Doc. 20, Maypearl's Mot. J. on Pleads. 3. For instance, the introductory paragraph in Plaintiff's Amended Complaint lumps the Maypearl Police Department in with Maypearl and Coffey when describing the defendants in this case, and the filing goes on to say that venue and personal jurisdiction are proper as to the Maypearl Police Department. Doc. 18, Pl.'s Am. Compl. 1–2. So it is unclear whether Plaintiff purports to assert any causes of action against the Maypearl Police Department. If she does, however, then those claims fall short. Municipal police departments may be sued only when they enjoy "a separate legal existence from the municipality." *Gordon v. Neugebauer*, No. 1:14-cv-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991)). And "Fifth Circuit cases 'uniformly show that unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.'" *Id.* (quoting *Darby*, 939 F.2d at 313). Plaintiff's Amended Complaint does not allege that the Maypearl Police Department enjoys a separate legal existence from Maypearl. Nor does it provide any basis from which the Court might draw an inference to that end. Thus, to the extent, if any, that Plaintiff's Amended Complaint asserts claims against the Maypearl Police Department, it is **DISMISSED**. *See id.* The Court will consider all allegations made against the Maypearl Police Department as against Maypearl itself.

even considering the § 1983 elements mentioned above because they are time-barred.[3] Doc. 20, Maypearl's Mot. J. on Pleads. 4–6. The Court agrees. "The statute of limitations for a suit brought under § 1983 is determined by the general statute of limitations governing personal injuries in the forum state." *Piotrowski*, 237 F.3d at 576. And "Texas has a two year statute of limitations for personal injury claims," so Plaintiff "had two years to file suit from the date her claim accrued." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 16.003). The question, then, is when Plaintiff's first three claims accrued.

Unlike the limitations period itself, "[a]ccrual of a § 1983 claim is governed by federal law: 'Under federal law, the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been inured.'" *Id.* (quoting *Russell v. Bd. of Trustees*, 968 F.2d 489, 493 (5th Cir. 1992)). Awareness involves two components: "(1) [t]he existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Id.* (internal quotations marks and citations omitted).

Meyer became aware of the alleged injuries on which Plaintiff's claims for illegal search and seizure and retaliation are based on May 18, 2013, "the day that those injuries occurred." *Humphreys v. City of Ganado*, 467 F. App'x 252, 255–56 (5th Cir. 2012) (citing *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002); *Piotrowski*, 237 F.3d at 576). Plaintiff brought suit on September 9, 2015. *See* Doc. 1, Pl.'s Orig. Compl. Thus, her first three claims were untimely—that Plaintiff brought them on behalf of Meyer's estate does not change the calculus. *See, e.g.*, *Vernon v. City of Dall.*, No. 3:08-cv-1068-B, 2009 WL 2486033, at *3–4 (N.D. Tex. Aug. 13, 2009). For that reason, the Court

---

[3]Maypearl also argues that Plaintiff's first three claims should be dismissed on the ground that they are implausible on their face. *See* Doc. 20, Maypearl's Mot. J. on Pleads. 5–6. Yet the Court need not address that argument because the claims are time-barred.

**DISMISSES** Counts One, Two, and Three in Plaintiff's Amended Complaint to the extent that they apply to Maypearl.

B.  *Plaintiff's Claims Against Bachman and Coffey*

Maypearl next attacks Plaintiff's remaining claims against Bachman and Coffey, specifically: (1) "violation of 42 U.S.C. § 1983 by Shannon Bachman; (2) "violation of 42 U.S.C. § 1983 by Kevin Coffey"; (3) "willful and wanton – wrongful death by Kevin Coffey"; and (4) "willful and wanton – wrongful death by Shannon Bachman." *See* Docs. 18, Pl.'s Am. Compl. ¶¶ 31–42, 55–74; 20, Maypearl's Mot. J. on Pleads. 6–8. To start, the Court notes that Shannon Bachman is not a named defendant. So for Plaintiff to assert causes of action against Bachman is, as Maypearl notes, perplexing. Doc. 20, Maypearl's Mot. J. on Pleads. 6. More to the point, though, it is still unclear whether Plaintiff's claims against Coffey and purported claims against Bachman implicate Maypearl.

Given that Plaintiff has a standalone § 1983 claim against Maypearl, the Court construes her claims against Coffey and Bachman referenced above as against Coffey and Bachman[4] individually for their actions. Thus if they were to implicate Maypearl at all, they would, as Maypearl notes, do so under a theory of respondeat superior. *See id.* 6–8. And "[i]t is clear that a municipality may not be held liable under [§] 1983 on the basis of respondeat superior." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004). The Court therefore **DISMISSES** Counts Four, Five, Seven, and Eight of Plaintiff's Amended Complaint to the extent that they apply to Maypearl. But in the interests of justice, the Court will consider facts alleged by Plaintiff in connection with those counts when it considers Plaintiff's § 1983 claim against Maypearl.

---

[4]Again, Bachman is not a party to this case. So Plaintiff cannot assert a cause of action against him.

C.  *Plaintiff's Claims Against Maypearl*

    1.  <u>Violation of 42 U.S.C. § 1983 Against Maypearl</u>

As stated above, for Maypearl to be liable under § 1983, Plaintiff must provide proof of: (1) a policymaker; (2) an official policy or custom; and (3) "a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578. Maypearl alleges that rather than proving those elements, Plaintiff just makes conclusory statements and asserts implausible claims. *See* Doc. 20, Maypearl's Mot. J. on Pleads. 8–12. As mentioned above, Plaintiff did not respond. The Court considers each element in turn.

        *i.*  *Bachman and Coffey as policymakers*

Throughout her Amended Complaint, Plaintiff refers to both Coffey and Bachman as "final policymakers" in Maypearl because each served at one time as its chief of police. *See* Doc. 18, Pl.'s Am. Compl. ¶¶ 17, 31, 37, 44–45. Maypearl, for its part, argues that Plaintiff's offers of proof are merely conclusory statements. *See* Doc. 20, Maypearl's Mot. J. on Pleads. 8. The issue, then, is whether Maypearl's chief of police is a policymaker.

Whether a city official is a policymaker is a question of state law to be determined by the Court. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). A policy maker is one who has "the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125. "[P]olicymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals." *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (citation omitted). And "[s]tate law, including valid local ordinances and regulations, 'will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.'" *Dall. Police Ass'n v. City of*

*Dall.*, No. 3:03-cv-0584-D, 2004 WL 2331610, at *4 (N.D. Tex. Oct. 15, 2004) (citing *Praprotnik*, 485 U.S. at 125).

If the governing body chooses to delegate policymaking authority to a city official, it can do so in one of two ways: (1) an express statement, job description, or formal action; or (2) "by its conduct or practice, encourage or acknowledge the agent in a policymaking role." *Bennet v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). In essence, "'[t]he governing body must expressly or impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board.'" *Webster*, 735 F.2d at 841 (quoting *id.*).

With that in mind, the Court must "consider state and local positive law as well as evidence of [Maypearl's] customs and usages in determining which [Maypearl] officials or bodies had final policymaking authority over the policies at issue in this case." *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 (5th Cir. 1999). Yet the burden rests on Plaintiff "to identify the positive law or evidence of custom demonstrating that" Bachman or Coffey were policymakers. *Dall. Police Ass'n*, 2004 WL 2331610, at *4 (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999); *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 99 (5th Cir. 1994)).

Plaintiff failed to meet that burden. Instead, she repeatedly offered variations of the flat statement that Coffey and Bachman were "final policymakers" in Maypearl because they served as chiefs of police. *See* Doc. 18, Pl.'s Am. Compl. ¶¶ 17, 31, 37, 44–45. Conclusory assertions like that are not enough for the Court to infer that Bachman and Coffey were final policymakers in this case. Plaintiff needed to point to some state or local law or evidence of custom to meet her burden—she

did not. *See Pinedo v. City of Hous.*, No. 3:14-cv-0958, 2015 WL 221085, at *5 (N.D. Tex. Jan. 15, 2015). "Without any other specific facts that would support [Plaintiff's] argument that the chief of police is the policymaker," Plaintiff's Amended Complaint "does not state sufficient facts to support the first element of municipal liability under [§] 1983." *Lyles v. City of Dall.*, No. 3:11-cv-0428-P, 2011 WL 13154073, at *3 (N.D. Tex. Sept. 16, 2011) (citing *Gros*, 181 F.3d at 616–17).

Thus, the Court concludes that Plaintiff failed to identify a policymaker for Maypearl. And while Plaintiff's § 1983 claim against Maypearl is subject to dismissal for that failure, the Court nevertheless considers the remaining elements needed to establish municipal liability.

    ii.    *Official policy or custom*

Maypearl next argues that Plaintiff's § 1983 claim ought to be dismissed because she pleads insufficient facts to support the existence of an official municipal policy. Doc. 20, Maypearl's Mot. J. on Pleads. 8–12. Official policies come in two general varieties for § 1983 purposes.

> First, an official policy can be "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Colle v. Brazos Cty.*, 981 F.2d 237, 244–45 (5th Cir. 1993). Second, an official policy could also be "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Johnson*, 379 F.3d at 309. [But] the mere fact that harm resulted from some interaction with a governmental entity does not permit the inference of an official policy under § 1983. *See Colle*, 981 F.2d at 245. Instead, to survive a motion [for judgment on the pleadings under Rule 12(c)], the plaintiff must specifically identify each policy which allegedly caused the constitutional violations. *See Piotrowski*, 237 F.3d at 579–80.

*Gordon*, 2014 WL 5531734, at *6. But just alleging that a policy exists won't do—"[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Plaintiff mentions the word "policy" or alludes to some policy of Maypearl's throughout her Amended Complaint. *See* Doc. 18, Pl.'s Am. Compl. ¶¶ 33, 39, 40, 43, 46–47. Eventually, though, she nails down what she believes to be the policies at issue:

46. There exists or existed a policy of the City to violate the Meyer's First, Fourth, Fifth, and Fourteenth Amendment rights.

. . .

49. One policy is to retaliate against, harass and intimidate Meyer for voicing concerns of police misconduct. This includes made death threats, threats to frame Mr. Meyer for criminal acts, illegally spying on Mr. Meyer, constant drive-bys, and police presence outside his Maypearl home and following him throughout the city of Maypearl. In addition, Chief Coffey, as well as other officers in the department, have also followed and intimidated family members of James Meyer by following them throughout the city or directing law enforcement officers to follow them and use pretextual traffic stops to question family members.

50. The other policy is to fail and refuse to properly supervise the MPD. It was obvious that the highly predictable consequence of not supervising MPD officers was that they would violate citizens' rights protected by the First, Fourth, Fifth and Fourteenth Amendments.

Doc. 18, Pl.'s Am. Compl. ¶¶ 46, 49–50. Maypearl argues that those claims are "factually unsupported and amount to nothing more than 'an unadorned, the defendant-unlawfully-harmed-me accusation.'" Doc. 20, Maypearl's Mot. J. on Pleads. 10. The Court agrees.

Plaintiff's Amended Complaint falls short in this respect for two reasons. First, it appears to pull the purported "policies" out of thin air. Plaintiff provides no basis for the Court to infer that Maypearl had the policies that Plaintiff alleges exist other than her belief, and "[c]onclusory allegations of 'customs, practices, or procedures' are not sufficient." *G.M. ex rel. Lopez v. Aledo Ind. Sch. Dist.*, No. 4:14-cv-019-A, 2014 WL 1084170, at *5 (N.D. Tex. Mar. 18, 2014) (quoting *Spiller*, 130 F.3d at 167). Second, the facts Plaintiff offers to support the existence of Maypearl's alleged policies are conclusory themselves. As Maypearl explains, "such allegations are conclusory because

they fail to identify specific conduct for each category of alleged action, they fail to identify the individual(s) involved, and they fail to identify when and where such events occurred." Doc. 20, Maypearl's Mot. J. on Pleads. 11.

At bottom, Plaintiff's Amended Complaint tries to bootstrap conclusory and implausible allegations into an official policy or custom that led to the violation of Meyer's or Plaintiff's rights. Rule 12(c) requires more. For that reason, Plaintiff failed to plead the second element of her § 1983 claim.

      *iii.*  *A violation of constitutional rights whose 'moving force' is the policy or custom*

Plaintiff inadequately pleads the third element of her § 1983 claim—that there was a violation of constitutional rights whose moving force was Maypearl's policy or custom—because she inadequately pled the first two. *See Piotrowski*, 237 F.3d at 578. The third element requires a plaintiff to "show both culpability and a direct causal link between the municipal policy and the constitutional violation." *Gordon*, 2014 WL 5531734, at *7. And because Plaintiff failed to identify an official policy promulgated by a Maypearl policymaker, she "is unable to identify any causal link between the alleged policy and the alleged constitutional violation." *Id.*

In sum, Plaintiff needed to plead enough facts to state a claim for relief that was plausible on its face. But she fell short in pleading each of the three elements needed to state a § 1983 claim against Maypearl. On that basis, the Court **DISMISSES** Plaintiff's § 1983 claims against Maypearl.

  2.  <u>Negligent Hiring, Supervision, and Retention by Maypearl</u>

The final issue here is Plaintiff's negligent hiring, supervision, and retention claim against Maypearl. Doc. 18, Pl.'s Am. Compl. ¶¶ 75–77. In particular, Plaintiff argues that Maypearl:

> knew or should have known that . . . Coffey's employment history demonstrated short tenures at a variety of police departments in a relatively short period of time. This lack

> of ability to retain a position long term should have caused concern to [Maypearl]. A basic investigation into Coffey's background would have also disclosed a prior civil lawsuit against him by a fellow officer, making him unfit to supervise other officers. The prior lawsuit proves a pattern of abuse of civil rights by Coffey while acting as a peace officer. By failing to use due care and caution prior to hiring or promoting . . . Coffey, [Maypearl] breached its duty of due care to the citizens of Maypearl, specifically to James and Mallory Meyer.

*Id.* ¶ 76. Maypearl's "lack of due diligence," Plaintiff continues, put Meyer and Plaintiff at "unreasonable risk of harm" and ultimately caused their injuries—"harassment, abuse, and the violation of their civil rights by Kevin Coffey and other officers acting" at his direction. *Id.* ¶ 77.

Maypearl counters that besides being conclusory and implausible, Plaintiff's claim is invalid under both federal and Texas law. Doc. 20, Maypearl's Mot. J. on Pleads. 12. As to a federal claim, Maypearl says, "Plaintiff fails to plead any facts, much less sufficient facts, connecting any part of [Coffey's] background with any alleged constitutional violation suffered by" Meyer. *Id.* at 16. Thus, Maypearl goes on, "Plaintiff's conclusory allegations of negligent hiring and supervision are inadequate to state a valid claim under § 1983" and Rule 12(c) and therefore ought to be dismissed. *Id.* at 16. As for any claim under Texas law, Maypearl contends it enjoys sovereign immunity absent a constitutional or statutory provision to the contrary. *Id.* at 16–17. "The Texas Tort Claims Act," Maypearl says, "sets out a specific and limited list of claims under which immunity may be waived and a governmental unity may be liable." *Id.* at 17. And "negligent hiring, supervision, and retention are not on the list." *Id.* Hence, any claim under Texas law, Maypearl concludes, is invalid as well. *Id.*

As an initial matter, the Court notes that Plaintiff fails to specify whether she brings this claim under § 1983 or Texas state law. As referenced, Maypearl addressed both out of an abundance of caution. So the Court, which finds Maypearl's argument persuasive, will too.

Both the Supreme Court and Fifth Circuit are clear on the two elements required "for holding

a city liable under § 1983 for inadequate hiring and training policies: culpability and causation. First, the municipal policy must have been adopted with 'deliberate indifference' to its known or obvious consequences. Second, the municipality must be the 'moving force' behind the constitutional violation." *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998).

Deliberate indifference is a high bar—"'a showing of simple or even heightened negligence will not suffice.'" *Gros v. City of Grand Prairie*, 209 F.3d 431, 433 (5th Cir. 2000) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997)). Instead, the plaintiff must demonstrate that "adequate scrutiny of an applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of a third party's constitutional rights." *Id.* at 433–34. Yet not just any deprivation will do; rather, the plaintiff "must show that the hired officer was highly likely to inflict the particular type of injury" that he or she suffered. *Id.* at 434.

Here, Plaintiff argues that Maypearl should be held liable for its "negligent hiring, supervision, and retention" of Coffey. Doc. 18, Pl.'s Am. Compl. 12. Yet negligence "will not suffice." *Gros*, 209 F.3d at 433 (internal quotation marks and citation omitted). So Plaintiff's claim is deficient on its face.[5] But even if the Court were to overlook that mistake and assume she meant "deliberate indifference" rather than negligence, Plaintiff's claim would still fall short.

Plaintiff alleges two basic facts to support her claim here: (1) that Coffey had moved jobs with some frequency in the past; and (2) that he had been sued by some unnamed coworker for some undisclosed reason at some unspecified earlier time. Doc. 18, Pl.'s Am. Compl. ¶ 76. In effect then,

---

[5]The term "deliberate indifference" is found twice in Plaintiff's Amended Complaint. Doc. 18, Pl.'s Am. Compl. ¶¶ 57, 67. Yet both times it appears in relation to her wrongful death claims. *See id.* Thus, the Court will not consider them here.

Plaintiff's argument is this: Had Maypearl adequately scrutinized Coffey and learned about those two things in his background, it would have been plainly obvious to Maypearl that Coffey would have improper contact with teenage girls and then retaliate against Meyer for blowing the whistle on him. The Court is unpersuaded and concludes that Plaintiff has failed to state a plausible § 1983 claim for inadequate hiring. *See, e.g.*, *Aguilard v. McGowen*, 207 F.3d 226, 230–31 (5th Cir. 2000) (concluding that county did not act with deliberate indifference when it hired an "an extremely poor candidate" with a record of domestic disturbances and violence who was convicted of murder after unlawfully shooting someone on the job because he "had never wrongfully shot anyone before, nor did his record reveal him to be likely to use excessive force in general or possess a trigger-happy nature in particular").

As for Texas law, the Fifth Circuit has made plain that the Texas Tort Claims Act is "not the appropriate vehicle for claims of negligent failure to train or supervise." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). Simply put, "claims of negligent hiring, supervision, and retention do not waive governmental immunity under the Texas Tort Claims Act for claims that do not arise out of the use or condition of tangible personal property." *Jackson v. Hunt Cty.*, Nos. 3:10-cv-2373-L & 3:10-cv-2379-L, 2011 WL 1869447, at *2 (N.D. Tex. May 13, 2011).

To be sure, Plaintiff's story does not rule out Coffey's use of Maypearl's equipment. For instance, he could have used a Maypearl Police Department cruiser to follow Meyer or members of his family around town.[6] *See Butler v. City of Dall.*, No. 3:14-cv-1991-B-BK, 2015 WL 8467029, at *9 (N.D. Tex. Nov. 4, 2015) (internal citations omitted) ("A badge, police uniform, gun, handcuffs,

---

[6] He also presumptively used Maypearl's handcuffs when arresting Meyer. Yet as explained above, claims arising from that incident are time-barred.

- 17 -

communication device(s), and/or car all constitute tangible property."). But Plaintiff also never truly points to Coffey using Maypearl's property to injure Meyer or Plaintiff. And that, perhaps, is the larger point—not all use is equal; rather, "the use of the property 'must have actually created the injury.'" *Russell v. City of Hous.*, 808 F. Supp. 2d 969, 974 (S.D. Tex. 2011) (quoting *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)). In other words, an officer's use of the property must actually cause the injury, not "'merely furnish some of the conditions that made [it] possible.'" *Id.* (quoting *Hendrix v. Bexar Cty. Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App.—San Antonio 2000, pet. denied)).

And here, Plaintiff fails to allege that Coffey used Maypearl's tangible personal property to that extent. *Cf. id.* (finding waiver of sovereign immunity when city knew of previous claims of sexual misconduct against officer but still furnished him with a gun and handcuffs that he directly used to restrain and sexually assault an arrestee). Thus, the Court concludes that Plaintiff failed to state a claim under the Texas Tort Claims Act. Accordingly, the Court **DISMISSES** Plaintiff's negligent hiring, supervision, and retention claim against Maypearl.

To conclude, the Court has granted Maypearl's Motion with respect to Plaintiff's entire suit against it—no claims against Maypearl remain. Yet given the nature and severity of Plaintiff's allegations, the Court concludes that it would be improper to render a final decision based on the sufficiency of Plaintiff's pleadings rather than the merit of her claims. *See Great Plains Trust, Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). And while Plaintiff has already amended her Complaint, "this is the first time the [C]ourt has addressed whether [her] pleadings sufficiently state a claim on which relief can be granted." *In re Am. Airlines, Inc. Privacy Litig.*, 370 F. Supp. 2d 552, 568 (N.D. Tex. 2005). For that reason, the Court **GRANTS** Plaintiff

leave to replead. *See id.*; *Obazee v. Bank of N.Y. Mellon*, No. 3:15-cv-1082-D, 2015 WL 4602971, at *6 (N.D. Tex. July 31, 2015) (allowing plaintiff to replead after granting defendant's motion for judgment on the pleadings).

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Maypearl's Rule 12(c) Motion for Judgment on the Pleadings and **DISMISSES** all of Plaintiff's claims against Maypearl. The Court further **GRANTS** Plaintiff leave to file an amended Complaint **no later than March 2, 2017**. If Plaintiff fails to amend her Complaint by March 2, 2017, then her claims against Maypearl will be **DISMISSED with prejudice**.

SO ORDERED.

SIGNED: January 31, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE